Leon B. Silver  (SBN:  012884)
Kira N. Barrett  (SBN:  029778)
Mary Curtin (SBN: 031973)
Meagan Swart (SBN 035632)
**GORDON REES SCULLY MANSUKHANI, LLP**
Two North Central Avenue Suite 2200
Phoenix, AZ 85004
Telephone:  (602) 794-2479
Facsimile:  (602) 265-4716
knbarrett@grsm.com
lsilver@grsm.com
mcurtin@grsm.com
mswart@grsm.com

Attorneys for Plaintiffs and Counterdefendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SinglePoint Direct Solar, LLC, and SinglePoint, Inc., <br><br>　　　　　　　　　　Plaintiffs, <br><br>　　vs. <br><br>Pablo Diaz Curiel, Kjelsey Johnson, Brian Odle, Solar Integrated Roofing Corp, Inc., USA Solar Network, LLC, David Massey, Elijah Chaffino, Christa Berume, and Jessica Hernandez, <br><br>　　　　　　　　　　Defendants. <br><br>AND RELATED COUNTERCLAIMS | **CASE NO.  2:21-cv-01076-JAT** <br><br>**STIPULATION RE PROTOCOL FOR THE COLLECTION AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)** |

Having met and conferred, Plaintiffs and Counterdefendants SinglePoint Direct Solar, LLC and SinglePoint, Inc., Counterdefendants Greg Lambrecht, Wil Ralston, and Corey Lambrecht, Defendants and Counterclaimants Pablo Diaz Curiel, Kjelsey Johnson, Brian Odle, Elijah Chaffino, Defendants Solar Integrated Roofing Corp, Inc., USA Solar Network LLC, David Massey, Christa Berume, and Jessica Hernandez, and Counterclaimants JAGUSA Holdings, LLC, Direct Solar LLC, and AI Live Transfers LLC (collectively, "the Parties") hereby stipulate to abide by the following protocols with respect to the collection and production of electronically stored information.

**1.     DEFINITIONS AND SCOPE.**

a.     "Documents" means (1) any "Writing," "Original," and "Duplicate," as those terms are defined by Rule 1001 of the Federal Rules of Evidence, and (2) any copies, reproductions, or summaries of all or any part of the foregoing.

b.     "ESI" is an abbreviation of "electronically stored information" and shall have the same meaning as used in Rules 26 and 34 of the Federal Rules of Civil Procedure, includes, but is not limited to, email, attachments to email, other electronic documents such as word processing, spreadsheet, PowerPoint, HTML, text files, cellular text messages, any instant messaging program, social media, voicemails, electrically stored photographs, accounting software, and any other files stored in an electronic format.

c.     "Native File(s)" or "Native Format" means ESI that has an associated file structure defined by the creating application in the file type of the application in which such ESI is normally created, viewed, modified, and/or exported.

d.     "Metadata" means: (i) information embedded in ESI; and (ii) information generated automatically by the operation of a computer or other information technology system when ESI is created, modified, transmitted, or otherwise manipulated.

e.     "Document Image(s)" means a representation of ESI produced by converting it into a standard image format capable of being viewed and printed on standard computer systems. TIFF files and Portable Document Format (PDF) files are examples of a Document Image.

f.     "Load/Unitization File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.  A Load/Unitization File will also contain data relevant to the individual Documents, including Metadata and coded data.

g.     "OCR" means the optical character recognition text created by software that is capable of reading text-based Documents and making such Documents searchable

1 using appropriate software.

2     h.    "Receiving Party" means any person or entity that receives Discovery Material from a Producing Party.

4     i.    "Producing Party" means any person or entity that produces Discovery Material.

6     j.    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

**2. PRODUCTION FORMAT.** For documents originally stored in paper format, the producing party shall have the option of making the documents available to the requesting party or producing the documents in electronic form. Documents produced in electronic form shall be produced in electronic image form in the manner described below in paragraph 2(a). Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for Documents not susceptible to production in the format or methods of production addressed herein. In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods. For example, a Producing Party shall respond to reasonable requests from a Receiving Party for the production of higher resolution or color images. Consent to these requests shall not be unreasonably withheld, but nothing in this Stipulation and accompanying Order shall preclude a Producing Party from objecting to such requests as unreasonable in number, timing, or scope.

    a.    **Electronic Production.** Except as set forth below, whenever possible, each party will produce ESI in single-page TIFF Document Image format with appropriate Load/Unitization Files and corresponding multipage searchable text files. All productions will conform to the following specifications:

        i.    All Document Images will be black and white, single-page, Group IV and, if possible, not less than 300 DPI resolution. If upon review, a Producing Party determines that a Document contains color that is material to the substance of the

1 Document, then the Producing Party shall produce the Document in color.  Parties are
2 under no obligation to enhance an image beyond how it was kept in the usual course of
3 business.

4     ii.    The Producing Party shall provide (i) a Relativity compatible
5 Metadata Load/Unitization File, with Relativity standard delimiters and the Metadata
6 required by this protocol; (ii) an image cross-reference load file providing the beginning
7 and ending endorsed Bates number of each Document, a link to the relative file path of
8 the Document's Image(s), and the number of pages it comprises; and (iii) electronically
9 extracted text for ESI, or text generated via OCR for hard copy Documents and ESI that
10 does not contain electronically extractable text (e.g. non-searchable PDFs or image files).

11     iii.    The Producing Party will generate and preserve the MD5 or SHA-l
12 hash values of all ESI based on the source Native File. The Producing Party shall use the
13 following specifications when converting ESI from its Native Format into Document
14 Image Files prior to its production.

15     iv.    All Document Images shall display tracked changes, comments,
16 speaker notes, hidden sheets/rows/columns and other data available in the Document,
17 regardless of the display setting for this information, saved by the last user, to the extent
18 technically possible.

19     v.    The Producing Party shall produce spreadsheets, PowerPoint files,
20 audio files, and video files in Native Format, with an accompanying single page
21 "placeholder" Document Image page for each such file bearing a Bates number and
22 confidentiality designation (if any) applicable to the file.  The Producing Party reserves the
23 right to produce spreadsheets containing redactions in image format.  The Receiving Party,
24 on the other hand, reserves the right to demand that any spreadsheets produced in image
25 format be re-produced in a different format to the extent that the Receiving Party
26 reasonably believes that the imaged spreadsheet is either illegible or is otherwise unusable.

27     vi.    In the event that a Producing Party locates a responsive Document
28 that is not capable of Document Image conversion, the Producing Party shall produce the

-4-

file in Native Format and also produce a single "placeholder" Document Image page for each such file bearing a Bates number and confidentiality designation (if any) applicable to the file.

vii. If a Document is produced that is unintelligible or not readily useable, the Receiving Party may make a reasonable request that such Document be produced in a different format. The Producing Party shall then, at its discretion, reproduce the Document in another format, such as Native format.

b. **Paper Documents.** For paper Documents that the producing party opts to produce in electronic form, Document Image files shall be created by scanning either the original paper Documents or first-generation photocopies of the original paper Documents. Each page of paper should be output to a single page Document Image file. In the case of an organized compilation of separate Documents (e.g., a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any Document or family relationship among the scanned Documents in the compilation should be reflected in the Load/Unitization File at the appropriate standard fields. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Parties will make their best efforts to unitize the Documents correctly.

c. **Searchable Text.** For ESI and any Document Image files created from paper Documents, the Producing Party shall provide full searchable text. The Producing Party shall provide Document-level text files, named per the Bates Number of the first page of each corresponding Document. If a portion of a produced Document has been redacted for privilege or otherwise, the OCR text produced shall not include the redacted text but will include placeholder OCR text reflecting that the Document was redacted and the basis for the redaction (e.g., "Redacted for Privilege").

d. **Metadata.** The Producing Party shall produce the Metadata information described below with each production and in the format described above. For Document

Images generated from ESI, a Producing Party shall produce with each production the following fields, where available, and each Load/Unitization File shall contain a link to natively produced Documents via data values named "Native File." The field naming conventions for the remaining fields shall be the following unless otherwise agreed and consistently applied for each production:

- STARTBATES – Indicates first page of a Document.
- ENDBATES – Indicates the last page of a Document.
- STARTATTACH – Indicates the first page of the first document in an attachment range.
- ENDATTACH – Indicates the last page of the last document in an attachment range.
- AUTHOR
- CONFIDENTIALITY – Indicates the confidentiality designation by the Producing Party.
- CUSTODIAN – Indicates the individual/source(s) assigned to the record at collection time.
- CUSTODIAN OTHER/ALL CUSTODIANS – Indicates the deduped custodian(s) for the record.
- EMAILTO
- EMAILFROM
- EMAILCC
- EMAILBCC
- EMAILSUBJECT
- EMAILSENTDATETIME (concatenated) or SENTDATE and SENTTIME (non-concatenated)
- FILENAME
- FILECREATEDATETIME (concatenated) or DATECREATED and TIMECREATED (non-concatenated)

1
2
3
4
5
6
7

- FILELASTMODDATETIME (concatenated) or DATELASTMOD and TIMELASTMOD (non-concatenated)
- DOCEXT – Indicates the file extension for the document.
- MD5HASH/SHA-lHASH
- TEXTLINK
- FILESIZE – Indicates the file size of the native document.
- NATIVELINK

In the event of any discrepancy between the confidentiality designation stamped on the Document Image and the confidentiality designation provided in the Metadata, the higher designation shall control until the producing party corrects the discrepancy by either providing a corrected Metadata overlay or a new production Document Image.

e.  **Document Unitization.**  For electronic Documents, the relationship of Documents in a Document collection (e.g., cover letter and enclosures, e- mail and attachments, binder containing multiple Documents, or other Documents where a parent-child relationship exists between the Documents) shall be maintained through the scanning or conversion process from Native Format to Document Image, provided however, that the Parties shall only be required to present one level of parent child relationship, unless reasonably requested by the Receiving Party for additional levels to be produced (e.g., attachments to emails that also contain attachments shall be treated as children of the top level parent email).  Document Images generated from attachments to e-mails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent e-mail.  All hard copy Documents imaged and produced electronically shall include a Load/Unitization File as described above.  When scanning paper Documents into Document Images, they shall be unitized in a manner so as to maintain the Document(s) and any attachments, as they existed in their original state.

For container files (for example .ZIP, .RAR, etc.), files should be extracted from their container entities and delivered as discrete entities.  Files shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest

possible compression resulting in individual folders and/or files.  When processing container files, the top level container file should be severed from the extracted contents within it, such that the container file will not be processed as part of a parent/child relationship with its contents.

  f. **Native Files.** Where Native Files are produced, they shall be accompanied by a single "placeholder" Document Image page containing the Bates number and confidentiality designation (if any) applicable to the file. In lieu of Bates-stamping any materials produced in Native Format, the Producing Party shall name each Native file using the corresponding Bates number on the placeholder.  In lieu of endorsing any materials produced in Native Format with any appropriate confidentiality designation required by any applicable protective order entered in this litigation, the Producing Party shall include in the name of each Native file a shorthand version of the appropriate confidentiality designation if possible and reasonable.  The Producing Party shall also include the appropriate confidentiality designation in the corresponding Metadata field and on the placeholder Document Image page accompanying the materials produced in Native Format.  Upon request by the Receiving Party, the parties will meet and confer to discuss whether an alternate production format is necessary for any Documents that cannot be accurately reviewed in Document Image format.

  **3.** **DUPLICATES.**  A Producing Party who has more than one copy of an electronic Document need only produce a single copy of that Document if it is identical to another Document that is being produced based on a comparison of MD5, SHA-l, or equivalent hash values.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  De-duplication will be done across the entire collection (global de-duplication) following industry standard de-duplication algorithms, and the Custodian Other field will list each custodian, separated by a semi-colon, who was a

source of that document. Should the Custodian Other metadata field produced become outdated due to rolling productions, an overlay file providing any updated custodian data will be produced prior to substantial completion of the document production. A Producing Party shall also respond to any reasonable requests from a Receiving Party for an updated overlay file, consent to which shall not be unreasonably withheld.

**4. FAMILY RELATIONSHIPS.** Family relationships shall be maintained for all responsive records, unless a claim of privilege is being asserted. Families refer to connected records, such as an email (the "parent") with its corresponding attachments (the "children"). If family relationships are severed due to privilege, Plaintiff shall provide a Privilege Log including the information set forth in paragraph 8 below, as well as the corresponding Group Identifier to identify the broken familial relationship.

**5. BATES NUMBERING.** Each Producing Party shall Bates number its production(s) as follows:

a. **Document Images.** Each page of a produced Document Image shall have a legible, unique page identifier ("Bates number") electronically "burned" onto the Document Image at a location that does not obliterate, conceal, or interfere with any information from the source Document. The Producing Party will use a consistent prefix throughout the matter. No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, the Bates number identified above, and any other internal tracking number that the Producing Party may choose to use.

b. **"Placeholder" Document Image Pages for Native Format Documents.** As set forth in paragraph 2 *et seq.*, Native Format Documents should have a single page "placeholder" Document Image page bearing a Bates number and confidentiality designation (if any) applicable to the file.

**6. FILE NAMING CONVENTIONS.**

a. **Document Records and Document Images.** Each Document record shall be named with the unique Bates Number for the first page of the document, as set forth

above. Each Document Image shall be named with the unique Bates Number it is associated with.

b. **Native Format Documents.** As set forth in paragraph 2(g), Native Format Documents shall be named by Bates number and file extension that correspond to the original Native Format. In lieu of endorsing any materials produced in Native Format with any appropriate confidentiality designation, the Producing Party shall include in the name of each file a shorthand version of the appropriate confidentiality designation if possible and reasonable. The Producing Party shall also include the appropriate confidentiality designation in the corresponding Metadata field and on the placeholder Document Image page accompanying the materials produced in Native Format.

7. **PRIVILEGE LOG.** Each party shall supply to the other party a list of all otherwise discoverable Documents or Metadata withheld or redacted from its production based on a claim of privilege or as trial-preparation material (the "Privilege Log").

a. For each Document and/or Metadata field withheld or redacted, the Privilege Log must include sufficient factual information for the other party to evaluate the merits of the claim of privilege consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

b. The Receiving Party reserves the right to request additional information regarding a Producing Party's privilege claim(s) to the extent reasonably necessary to assess the validity of the privilege claim(s).

8. **ELECTRONIC DEVICES**. The Producing Party shall make available to Requesting Party's designated eDiscovery Expert/Entity ("eDiscovery Entity") all electronic media and devices (including, but not limited to, desktop computers, laptop computers, external hard drives, and mobile phones) that were used at any time to conduct business on behalf of, or otherwise contain information relating to claims and defenses asserted by the Parties in the Action. Notwithstanding the forgoing, the Party requesting electronic media and devices must provide the scope of the request to the eDiscovery Entity charged with gathering the identified ESI and to the Disclosing Party, and provide the

-10-

Disclosing Party with a reasonable opportunity (no less than 14 days) to object to the scope of the request. The Parties agree that the eDiscovery Entity shall have the right to image or clone the relevant files of the media and devices provided by the Producing Party. Nothing in this paragraph is intended to give counsel access to, or the right to review, data stored on the referenced media and devices that is not related to the Parties or claims or defenses asserted in the Action. The eDiscovery Entity shall take appropriate measures to ensure that any personal data contained on the media and devices is not provided to the Requesting Party or their respective counsel.

**9.     MODIFICATION.**  This Order may be modified by the agreement of the parties or by the Court for good cause shown.

**10.     LIMITATIONS.**  Nothing in this Order shall be construed to prohibit the undersigned parties from agreeing to modify any provision of this Order or seeking relief from the Court.  Nor shall anything in this Order or any party's compliance with this Order be construed as a waiver of any party's rights under the Federal Rules of Civil Procedure or any other applicable law.  Nor shall anything in this Order be interpreted to require disclosure of information that is not relevant to the claims or defenses in this case or that is protected by any applicable privilege.  Nor shall anything in this Order be construed to waive any objections as to the production, discoverability, or confidentiality of ESI.  In addition, nothing in this Order concerning the format in which Documents may be produced by a party shall be construed as having any precedential effect in any other legal proceeding.

**11.     COMPLIANCE WITH DISCOVERY OBLIGATIONS.**  Each party shall comply with the discovery rules contained in the Federal Rules of Civil Procedure.

**12.     DISPUTES**.  If a dispute relating to the collection and production of ESI arises that cannot be resolved through the meet and confer process, the parties may submit their respective positions to the Court in compliance with the Federal Rules of Civil Procedure, Local Rules, and applicable chambers rules. Should the appointment of a Special Master become necessary, the Parties will meet and confer to select a neutral with

1  proven experience resolving ESI disputes. The Special Master's confirmation shall be
2  subject to the affidavit requirements of Fed. R. Civ. P. 53(b)(3)(A) and 28 U.S.C. § 455.

**IT IS SO STIPULATED.**

RESPECTFULLY SUBMITTED this 25th day of March, 2022.

         GORDON REES SCULLY MANSUKHANI, LLP

         */s/ _Kira N. Barrett_____*
         Leon B. Silver
         Kira N. Barrett
         Mary M. Curtin
         Meagan J. Swart
         *Attorneys for Plaintiffs/Counterdefendants*

         MARQUIS AURBACH COFFING

         */s/ _Cody S. Mounteer_____*
         Cody S. Mounteer
         Alexander K. Calaway
         Kathleen Wilde LaBay
         *Attorneys for Defendants/Counterclaimants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Cody S. Mounteer, Esq (admitted pro hac vice)
Alexander K. Calaway, Esq. (admitted pro hac vice)
Kathleen Wilde LaBay, Esq.
MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
cmounteer@maclaw.com
acalaway@maclaw.com
kwilde@maclaw.com
Attorneys for Defendants/Counterclaimants

Kimberley M. Davison