**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SinglePoint Direct Solar, LLC; and SinglePoint, Inc.,<br>　　　　Plaintiffs,<br>v.<br>Pablo Diaz Curiel; Kjelsey Johnson; Brian Odle; Solar Integrated Roofing Corporation; USA Solar Network, LLC; David Massey; Elijah Chaffino; Christina Berume; and Jessica Hernandez,<br>　　　　Defendants.<br>──────────────────────<br>Pablo Diaz, individually and derivatively on behalf of Nominal Counterdefendant SinglePoint Direct Solar, LLC; JAGUSA Holdings, LLC; Elijah Chaffino; Kjelsey Johnson; Brian Odle; Direct Solar LLC; and AI Live Transfers LLC.<br>　　　　Counterclaimants,<br>vs.<br>SinglePoint Inc.; SinglePoint Direct Solar, LLC (as to direct counterclaims); Greg Lambrecht; Wil Ralston; Corey Lambrecht; Does I-X, Inclusive; and Roe Corporations I-X, Inclusive,<br>　　　　Counterdefendants,<br>and<br>SinglePoint Direct Solar, LLC,<br>　　　　Nominal Counterdefendant. | CV-21-01076-PHX-JAT (Lead)<br>CV 21-00989-PHX-JAT (Cons)<br><br>**ORDER** |

　　Pending before the Court is Defendant's Motion to Disqualify opposing counsel (Doc. 170). The Court now rules on the Motion.

## I. BACKGROUND

Defendant Pablo Diaz Curiel was previously represented in this matter by attorney Alexander Calaway and the law firm Marquis Aurbach Chtd (MAC). In August of 2022, this Court granted a motion to substitute counsel because a conflict of interest arose between the jointly represented defendants. (Doc. 164; Doc. 162). Diaz now moves to disqualify both Calaway and MAC under Rule 1.9 of the Arizona Rules of Professional Conduct. He claims that Calaway "switched sides" by bringing a lawsuit in Nevada that was materially adverse to his interests, and by aiding another attorney in bringing a lawsuit against him in California. (*See* Doc. 70). Diaz was not a party to the Nevada lawsuit, but he asserts that the case impacted stock shares he claims to own that are involved in this lawsuit. (*See* Doc. 170 at 1–2). Regarding the California suit, although Diaz was a defendant, Calaway did not represent any parties. (*See* Doc. 170 at 9–10). Diaz asserts that these two suits are grounds to have Calaway disqualified from representing Defendants in this case.

## II. LEGAL STANDARD

The Arizona Rules of Professional Conduct make clear that violation of an ethics rule "does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation." Ariz. R. Sup. Ct. Rules, Rule 42, Preamble at ¶ 20 [hereinafter E.R.]. The Rules are designed to "provide guidance to lawyers and to provide a structure for regulating conduct *through disciplinary agencies*." *Id.* (emphasis added). The preamble cautions that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* Thus, courts must be on the lookout to ensure that the Rules are being applied and enforced for proper purposes. The United States District Court for the District of Arizona has adopted the Arizona ethics. LR Civ 83.2(e). Thus, these standards apply when answering ethical questions.

Even though the Arizona Rules govern ethics in the District of Arizona, they only provide standards for ethical enforcement and are "not designed to be used as a means to

disqualify counsel." *Amparano V. ASARCO*, 93 P.3d 1086, 1092 (Ariz. Ct. App. 2004). When undertaking a disqualification analysis, courts can look to the ethics rules, but these rules are not binding. *See id.* Courts, then, play a far different role than bar associations or disciplinary agencies when ethical rules are involved.

Ethical Rule 1.9, which Diaz claims Calaway violated, states that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to" those of the former client, "unless the former client gives informed consent, confirmed in writing." Additionally,

> (d) When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under ER 1.9 unless:
>
> (1) the matter does not involve a proceeding before a tribunal in which the personally disqualified lawyer had a substantial role;
>
> (2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.

E.R. 1.10(d).

Looking to this ethical rule as a guide, Arizona courts have noted that while notifying clients of conflicts and receiving consent to move forward with a representation is an important ethical duty of a lawyer, "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v. Super. Ct. In and For Maricopa Cnty.*, 685 P.2d 1309, 1313 (Ariz. 1984). The movant must show "sufficient reason" why an attorney must be disqualified. *See id.* Disqualification should be the option of last resort. And, whenever possible, courts "should

endeavor to reach a solution that is least burdensome upon the client ...." *Id.* This is why the Ninth Circuit has stated that disqualification motions are subject to a "particularly strict scrutiny ...." *Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. and Power Dist.*, 810 F.Supp.2d 929, 944 (D. Ariz. 2011).

In the disqualification analysis, joint representation presents a unique situation. As the comments to Ethical Rule 1.7 state, "as between commonly represented clients, the [attorney-client] privilege does not attach." *See* E.R. 1.7 cmt. 28. Thus if the commonly represented clients end up in litigation "the privilege will not protect any such communications." *Id.*; Ariz. Eth. Op. 07-04. The same is true for confidentiality. As comment 29 notes, "each client has the right to be informed of anything bearing on the representation that might affect that client's interests and the right to expect that the lawyer will use that information to that client's benefit." *Id.* at cmt. 29. Indeed, if one client wishes to keep a piece of information confidential from the other client, the lawyer must withdraw from the joint representation. *See id.* In its most basic formulation, as the Arizona Supreme Court has stated, "there is a recognized presumption that as between joint clients ordinarily there is no expectation of confidentiality." *Alexander*, 685 P.2d at 1315; Udall & Livermore, *Arizona Practice*, *Law of Evidence* § 74 at 142.

When these principles overlap with the context of former clients the analysis involved in Ethical Rule 1.9 changes. Because there is no confidential or privileged information as between jointly represented clients, if a lawyer who at one time jointly represented two clients, and who is now suing one on behalf of the other, discloses information learned from the former client, there is no violation of Rule 1.9. *See Alexander*, 685 P.2d at 1316. Thus, as the Arizona Supreme Court has held, in this context "the substantial relationship test [of Rule 1.9] is not applicable." *See id.*[1]

### III.   ANALYSIS

While the question of whether it is an ethical violation for an attorney who formerly

---

[1] Although the Arizona Supreme Court was interpreting the old Arizona Ethical Rules in *Alexander*, it did discuss the then Model Rule 1.9 stating "[w]e believe our holding in the present case meets both sections of Rule 1.9." *Alexander*, 685 P.2d at 1316.

- 4 -

1   represented a client under a joint defense agreement to subsequently bring a case involving
2   that client's financial interests seems to be one of first impression, in the specific
3   circumstances here, the answer is clear. First, Diaz signed a Joint Representation Letter
4   and Waiver of Potential Conflict document that bars him from seeking to disqualify
5   Calaway or Marquis Aurbach for any reason. (*See* Doc. 170-2 at 11). Second, even if he
6   was allowed to move to disqualify, because he was jointly represented, none of the
7   information he shared with his former attorney was privileged or confidential as between
8   the other jointly represented defendants. Thus, Rule 1.9 was not violated. Finally, the
9   Nevada suit, which he was not party to, was voluntarily dismissed, and the California suit,
10  which he was party to, was not brought with the help of Calaway or Marquis Aurbach. And
11  there is no evidence that Calaway aided the California attorneys in bringing that suit.
12  Ultimately this issue is better left to the bar to decide.

### a. The Conflict Waiver

Diaz expressly waived his right to move to disqualify Calaway and Marquis Aurbach, thus, his motion will be denied.[2] To overcome this result, Diaz argues that the waiver is unenforceable. Before undertaking the joint representation, Marquis Aurbach had all defendants sign a Joint Representation Letter and Waiver of Potential Conflict. [hereinafter Letter]. (*See* Doc. 170-2). The Letter stated "[b]y signing below, you agree that you will not seek to disqualify MAC from representing Current Clients and Defendants, or any related individual or entity *at any time, for any reason*, whether now of in the future." (*See id.* at 11) (emphasis added). The document also acknowledged that this was a valid conflict waiver under the ethics rules. (*See id.*). Diaz, along with Calaway, signed the document. (*See* Doc. 172-2 at 9). Such waivers have long been recognized as "valid to cure conflicts with the ethical rules." *United States v. Lacey*, No. CR-18-00422, 2018 WL 4953279, *4 (D. Ariz. Oct. 12, 2018). This is recognized under Rule 1.7, which

---

[2] As discussed below in Sections III.b. and c., even if Diaz was not bound by the waiver of his right to disqualify, he still would not be successful in his motion. There was no breach of ethical duties that warrants disqualification, the suit in Nevada was dismissed, and there is no connection between Calaway and the California suit. Furthermore, there does not appear to be any damage that would befall Diaz from Calaway's continued representation of Defendants. Consequently, there is no basis for disqualification.

1   notes that Rule 1.9 conflicts can be waived by a client through "informed consent,
2   confirmed in writing ...." ER 1.7. This waiver can be given in advance. *See Lacey*, 2018
3   WL 4953279 at *4. This Court finds that the agreement clearly anticipated circumstances
4   in which the jointly represented parties would become adverse. The Letter notes both that
5   there is a risk that information communicated by Defendant to the attorney cay be used
6   adversely to him, and that the jointly represented parties, and their interests, could come
7   into conflict. (*See* Doc. 172-2 at 3). Understanding this, Diaz affirmatively waived his right
8   to move to disqualify counsel. This agreement is valid and enforceable, and Diaz agreed to
9   its terms. Thus, he cannot bring this motion.

10      Diaz claims that he is relieved from his duties under the Letter because Calaway
11  breached the Letter. He asserts that the Letter states that at the time it was signed there was
12  no conflict between defendants, and that Calaway was directed not to bring any cross
13  claims. (*See* Doc. 170 at 12). Further, Diaz asserts that the Letter only noted the possibility
14  that MAC would withdraw from representation of Diaz if a conflict arose, but said nothing
15  about bringing claims against Diaz after withdrawing. (*See id.*). Finally, he claims that the
16  Letter states that MAC may be precluded from representing any party if a dispute arises
17  without "first obtaining the consent of the concerned parties." (*See id.*). Because his
18  consent was not received, and he was not advised in the Letter that MAC could potentially
19  sue him, he maintains that MAC and Calaway breached their duties under the Letter, and
20  that he is relieved of his duties.

21      Yet there was enough information in the Letter that indicated that a dispute could
22  arise between the jointly represented defendants, and nothing in the agreement stated that
23  Calaway would not bring a lawsuit against Diaz on behalf of any of the other defendants.
24  Indeed, by alerting Diaz to the fact that a dispute could develop between the defendants
25  and that Calaway would withdraw only from representing him, the Letter indicated that
26  there was a chance that the other defendants would sue Diaz and that Calaway would
27  represent them. Consequently, this Court finds that neither Calaway nor MAC breached
28  the Letter. Diaz is still bound by its express terms.

It should be noted that while the Court finds that the agreement not to move to disqualify is valid and enforceable as to Diaz, the Court does not pronounce on whether the inclusion of such a clause comports with ethical standards. A disciplinary agency could very well find that the inclusion of such a clause constitutes an ethical violation. Yet, the Bar is far better suited to making this determination than is this Court. The only question the Court is answering is whether Calaway and MAC should be disqualified from continuing their representation. This is different from whether an attorney has breached an ethical duty.

### b. Ethical Rules 1.7 and 1.9

There is also no viable claim based on Ethical Rule 1.9 because Calaway never learned any information that was confidential or privileged from Diaz. Diaz, then, cannot claim that there was any misuse of confidential information by Calaway. As the Arizona Supreme Court has held, there is a "presumption that as between joint clients ordinarily there is no expectation of confidentiality." *Alexander*, 685 P.2d at 1315. *Alexander* involved an attorney who represented a group of investors as well as the owners of a company they were investing in. *See id.* at 1312, 1314. The court first ruled that the attorney could not represent both groups. *See id.* at 1315. It then addressed the question of whether the attorney could continue to represent the business owners in an action that is adverse to the investors. *See id.* The court held that he could continue to represent the business owners because in the joint representation context, none of the information learned from a client is confidential. *See id.* at 1315–1316. Thus, there is no violation of ethical rules. *See id.* Consequently, when an attorney who jointly represent clients withdraws from the representation of the secondary client and subsequently sues that client on behalf of the primary client, there is no violation of Rule 1.9. *See id.* at 1316. Here, then, there is no violation of the ethical rules because no privileged or confidential information was learned by Calaway from its then secondary client Diaz. Thus, in joint representation situations, such as this one, it is clear that there is no violation of Rule 1.9.

This is confirmed by the comments to the Arizona Rules of Professional Conduct.

As the comments to Rule 1.7 note, "as between commonly represented clients, the [attorney-client] privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications ...." E.R. 1.7 cmt. 28. This also applies in the context of confidential communications. Lawyers, the comments state, have "an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation ...." E.R. 1.7 cmt. 29. Thus, there is no confidentiality as between commonly represented clients either. The Arizona State Bar Association has confirmed this. In a published ethics opinion it stated that "there is no attorney-client privilege between jointly represented clients ...." Ariz. Ethics Op. 07-04. Indeed, "Privilege is inapplicable to disputes between joint clients[.]" *Id.* (internal quotations and citations omitted). Furthermore, the opinion asserts that "there is no individual confidentiality when a joint representation exists." *Id.* Clearly Diaz was informed of this. The Letter, which he signed, states that multiple representation may result in the loss of attorney-client privilege for "communications between each of the Defendants and members of our firm." (Doc. 170-2 at 7–8). On this basis as well, then, Diaz's motion to disqualify Calaway and MAC will be denied.

### c. Materially Adverse

Although the Joint Representation Letter and the Arizona Rules of Professional Conduct are dispositive, this Court will address Diaz's claim that Calaway is engaged in a representation that is materially adverse to his interests. (*See* Doc. 170 at 2). As stated above, Diaz claims that Calaway brought a lawsuit in Nevada seeking to prevent the transfer of certain shares of stock to Diaz. Additionally, he asserts that Calaway assisted attorneys in California in bringing a lawsuit against him. Thus, he claims, Calaway is violating ethical rules and should be disqualified. Neither of these lawsuits provide an adequate basis for claiming an ethical violation that necessitates disqualification, however. First, Diaz was not a party to the Nevada suit. (*See* Doc. 172 at 2). The only part of the lawsuit that concerned Diaz was that it involved shares that he had a claim to. (*See id.* at 8–9). While this might have been enough were the suit still pending, it is not. (*See id.* at

11). The suit was voluntarily dismissed because it was no longer deemed necessary to stop the transfer of the shares. (*See id.* at 10–11). Consequently, even if Calaway was representing a client in a way that is materially adverse to Diaz, he is no longer. Thus, there is no basis for a claim that Calaway should be disqualified.[3]

Nor can such a claim be based on the California case. Although Diaz was a named party in that case, neither Calaway nor Marquis Aurbach represented any of the parties. (*See* Doc. 172 at 2–3). Diaz claims, upon information and belief, that because Calaway stated that he was dealing with "emergency litigation matters[,]" missed a conference call, and used language and statements in the Nevada lawsuit that are somewhat similar to those used in the California lawsuit, that he aided California attorneys in preparation of that lawsuit. (*See* Doc. 170 at 9–10). Yet, this only amounts to speculation. There is no actual evidence that Calaway worked with attorneys from California or that he disclosed any confidential information to them. The disqualification of an attorney is a serious interference with the client's ability to choose its counsel. At minimum it requires some admissible evidence of wrongdoing. Here there is none. Thus, it cannot be said that Calaway is acting in a way that is materially adverse to his former client's interests.

Diaz hypothesizes that this Court will find evidence of collaboration if we look at the communications between Calaway and the attorneys in the California case. They thus request that this Court conduct an *in camera* review of all communications, phone records, text exchanges, and billing entries between Calaway and the California attorneys. (*See* Doc. 173 at 8). This is an extraordinary request. Assuming there were any communications, which too is speculation, this would most certainly require the disclosure of privileged and confidential information. This Court declines to undertake such a review. This type of investigation is one more easily undertaken by the state bar, rather than a district court. Not only does the bar have the resources, but they are also far more suited to such a task. It is far easier for them, through their investigative wing, to determine whether Calaway had

---

[3] The Court here is not ruling on whether there is an ethical violation that would warrant action by the state bar. It is simply holding that the Nevada case is not an adequate ground for the disqualification of Calaway.

- 9 -

any improper contacts with the California attorneys than it is for this Court. This Court is not an investigative body. It merely resolves disputes.

### d. Appearance of Impropriety

Finally, Diaz claims that Calaway should be disqualified because of the "appearance of impropriety[.]" (Doc. 170 at 10). Recognizing that this standard is no longer included in the Arizona Rules of Professional Conduct, Diaz asserts that it is still a viable ethical principle that this Court should consider. (*See id.* at 5). In this context, this ethical guidepost is not a sturdy enough basis for a disqualification, however. As the District Court and the Ninth Circuit have both noted, "disqualification motions should be subjected to 'particularly strict scrutiny' because of their potential for abuse." *Roosevelt Irr. Dist.*, 810 F.Supp.2d at 944 (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)). As part of this, the Arizona Supreme Court has directed courts to try to reach the least burdensome solution in such cases. Additionally, it has set fourth four factors for courts to weigh against the benefit of allowing a party to keep his counsel in "appearance of impropriety" cases. First, whether the motion is being made to harass the defendant; second, whether the movant will be damaged if the motion is denied; third, whether there are alternative solutions, or is the requested relief the "least damaging possible under the circumstances[;]" and fourth, whether the possibility of public suspicion outweighs the benefits of continued representation. *See Alexander*, 685 P.2d at 1317. When set against the benefits of continued representation, these factors point towards the denial of the motion.

The first factor is neutral. Calaway suggests that the motion is simply a "retaliatory tactic" by Diaz against his former employers. Yet there is no clear evidence of this. It thus does not weigh in either direction. The second factor weighs in favor of denial, however. Since Calaway is not representing a client *in this case* in a way that is materially adverse to Diaz's interests, Diaz will in no way be damaged if Calaway is not disqualified here. Disqualification to protect against the disclosure and use of confidential information is often necessary to protect a party. Yet, this disqualification motion is not based on

Calaway's continued representation of parties in this case, but in others. Thus, it is hard to see what damage is occurring to Diaz here from the continued representation. The third factor also weighs in favor of denial. There is a perfectly adequate alternative. Diaz is completely free to bring this issue before the state bar and seek disciplinary action. This alternative would be the least damaging to both the parties and the Court. The fourth consideration, public suspicion, too weighs against disqualification. The case of an attorney who formerly represented a client bringing a separate case involving assets belonging to that client does not raise the specter of public mistrust of the legal profession. Finally, there are large benefits to continued representation. This case began over a year ago. Calaway and Marquis Aurbach are deeply familiar with the issues involved and the evidence. Disqualifying them now would set the case, the parties, and this Court back significantly, and would be a tax on both limited judicial resources and the opposing parties' resources to pay a new lawyer to get up to speed. Here, as is often the case, the "appearance of impropriety is simply too slender a reed on which to rest a disqualification order ...." *See id.* (internal quotations removed).

### e. Future Harm from Continued Representation

Fundamentally, the central question in any disqualification inquiry is whether there will be harm, going forward in a case, from an attorney's representation of a client. While Diaz did allege serious ethical violations, his papers failed to answer this question because they did not allege any future harm in this case. The Court gave counsel for Diaz the opportunity to answer during oral argument. In response to the Court's question, counsel raised, for the first time, the possibility that statements made by Calaway in the Nevada litigation could be brought in as evidence in this case. Specifically, Diaz's counsel stated that statements made by Calaway in the Nevada case could constitute "party opponent admissions" under Federal Rule of Evidence 801. *See* Fed. R. Evid. 801. He also noted that these statements could be used to establish a pattern and practice, and thus be brought in as character evidence under rule 404(b). *See* Fed. R. Evid. 404(b). He also argued that Calaway's continued representation would raise issues relating to his credibility, creating

unfair prejudice. This court finds, however, that these potential harms are too speculative at this point in time to constitute a basis for disqualifying Calaway.

None of these harms have occurred in this case, and it does not seem likely that they will. Furthermore, if they do, this Court has the ability to issue limiting instructions and use other tools to prevent any unduly prejudicial information from reaching the jury. If and when any of these issues arise, the parties are free to bring it to the attention of the Court so that they can be dealt with appropriately. Importantly, even if this Court were to disqualify Calaway, all of the evidence that counsel for Diaz is concerned about could still potentially be brought in by substitute counsel. Thus, it does not seem that the harms alleged would be remedied by disqualification. When this Court asked counsel for Diaz about this, counsel pointed to the issue of Calaway's credibility. Yet this Court has the tools available to ensure that no unfair prejudice arises from the fact of Calaway's former representation of Diaz. Thus, the harms as alleged do not meet the high standard for disqualification.

Because disqualification is an extreme remedy and Diaz has not shown a violation of the conflicts waiver; the ethics rules; or the "appearance of impropriety" standard; and further, has not pointed to any tangible harm that is occurring or could likely result from Calaway's continued representation of defendants, the Motion to Disqualify and to revoke Calaway's Pro Hac Vice admission is denied.

## IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Emergency Motion to Disqualify (Doc. 170) is denied.

**IT IS FURTHER ORDERED** that Defendant's motion to Revoke the Pro Hac Vice Admissions of Marquis Aurbach's Attorneys (Doc.170) is denied.

Dated this 5th day of December, 2022.

*James A. Teilborg*
Senior United States District Judge